# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00630-CR

**David Browne, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. CR2013-466, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## O P I N I O N

David Browne was arrested and charged with four counts of aggravated sexual assault of a child and two counts of indecency with a child by contact. *See* Tex. Penal Code §§ 21.11(a) (listing elements for offense of indecency with child), 22.021(a)(1) (setting out offense of aggravated sexual assault). The offenses were alleged to have occurred at a daycare run by Browne's wife in their home. The victim in this case, Anthony,[1] attended the day care for several years. Although Browne worked outside the home, he would come home for lunch once or twice a week. On some of those occasions, Browne's wife would run errands and leave the children in Browne's custody.

Prior to his arrest, Browne agreed to be interviewed by the police. During the lengthy interview, Browne initially denied the accusations but later admitted to having engaged in some inappropriate activity with Anthony. In addition, Browne also wrote a letter to Anthony generally

---

[1] Anthony was the pseudonym used to refer to the victim during the trial.

apologizing for his behavior. After his arrest, Browne had several conversations with his wife while he was in jail. During the trial, recordings of Browne's interview with the police, the letter that Browne wrote, and recordings of his conversations with his wife were admitted into evidence.

The indictment in this case contained four charges for aggravated sexual assault and two charges for indecency with a child. In the first two charges for aggravated sexual assault, the indictment alleged that in February of 2010 and 2011 Browne "intentionally or knowingly caused the penetration of the mouth of Anthony . . ., a child younger than 6 years of age, with the male sexual organ of" Browne or "intentionally or knowingly caused the mouth of Anthony . . . to contact the male sexual organ of" Browne. At the end of guilt or innocence phase, the jury acquitted Browne of these two charges.

Regarding the next two aggravated-sexual-assault charges, the indictment alleged that in February of 2010 and 2011 Browne "did then and there intentionally or knowingly cause the penetration of the anus of Anthony . . . with the finger or fingers of" Browne. For the indecency charges, the indictment alleged that in March of 2010 Browne "did then and there, with intent to arouse or gratify the sexual desire of any person, engage in sexual contact with Anthony . . . by touching the genitals or part of the genitals of . . . Anthony . . . with the hands or fingers of" Browne and "did then and there, with intent to arouse or gratify the sexual desire of any person, engage in sexual contact with Anthony . . . by causing . . . Anthony . . . to touch the genitals or part of the genitals of" Browne. At the end of the guilt or innocence phase, the jury found Browne guilty of these four charges.

At the end of the punishment phase, the jury recommended that Browne be sentenced to life imprisonment for each of the two aggravated sexual assaults and to 20 years' imprisonment

2

for each of the two acts of indecency with a child. *See id.* §§ 21.11(d) (specifying that offense of indecency with child is second-degree felony where defendant engaged in sexual contact with child or caused child to engage in sexual contact), 22.021(e) (specifying that aggravated sexual assault is first-degree felony), (f) (setting minimum sentence at 25 years' imprisonment if victim is younger than six years old); *see also id.* §§ 12.32 (setting out punishment range for first-degree felony), .33 (listing permissible punishment range for second-degree felony). The district court entered its judgments of conviction in accordance with the jury's verdicts.

In four issues on appeal, Browne contends that his trial counsel provided ineffective assistance when his counsel did not request a medical-care-defense jury instruction for the aggravated-sexual-assault charges and when his counsel failed to object to the State's improper jury argument and that the district court erred by failing to cure improper statements made by the State and by denying his motion for mistrial. We will affirm the district court's judgments of conviction.

## DISCUSSION

### Ineffective Assistance of Counsel

In his first two issues on appeal, Browne contends that his trial counsel was ineffective.

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

3

*Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). Evaluations of effectiveness are based on "the totality of the representation," *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies), and allegations of ineffectiveness must be firmly established by the record, *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136. For example, in certain circumstances, the failure to request a jury instruction on a defensive theory can constitute ineffective assistance of counsel. *See Villa v. State*, 417 S.W.3d 455, 463-64 (Tex. Crim. App. 2013).

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett*, 65 S.W.3d at 63 (stating that in majority of cases, record in direct appeal is undeveloped and "cannot adequately reflect the motives behind trial counsel's actions"). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an

attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). For ineffectiveness claims based on the assertion that a trial attorney failed to make an objection, the defendant must show that if an objection had been made, the trial court "would have committed error" by not sustaining the objection. *See Brown v. State*, 6 S.W.3d 571, 575 (Tex. App.—Tyler 1999, pet. ref'd).

*Medical-Care Defense*

In his first issue on appeal, Browne contends that his trial counsel provided ineffective assistance by failing to request a jury instruction for the medical-care defense to aggravated sexual assault. That defense is codified in the Penal Code and provides that "[i]t is a defense to prosecution . . . that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." *See* Tex. Penal Code §§ 22.011(d) (setting out defense), .021(d) (explaining that medical-care defense applies to aggravated assault cases); *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013) ("*Cornet II*") (stating that "the medical-care defense does not negate criminal intent but rather 'merely justifies' what would otherwise be an unlawful touching of a child" (quoting *Cornet v. State*, 359 S.W.3d 217, 225 (Tex. Crim. App. 2012) ("*Cornet I*"))); *see also Cornet I*, 359 S.W.3d at 221-22 (explaining that availability of defense does not turn on "accused's familiarity with the science of medicine" but upon nature of conduct). When discussing the defense, the court of criminal appeals has explained that the legislature's use of the phrase "medical care" was not intended "to exclude inspections, whether conducted by trained

5

medical personnel, by a parent, or by another adult acting in loco parentis, when those inspections are undertaken for the medical benefit of the child." *Cornet I*, 359 S.W.3d at 223; *see also id.* at 223-24 (concluding that evidence presented at trial raised issue of whether inspection was medical care where defendant testified that he was examining child to see if there was any evidence of sexual contact and where defendant had good reason to believe that child had been abused).

"The medical-care defense is one of confession and avoidance." *Villa*, 417 S.W.3d at 462. "As such, a defendant claiming entitlement to an instruction on the medical-care defense must admit to each element of the offense, including both the act and the requisite mental state." *Id.* "If the defensive evidence does no more than attempt to negate an element of the offense, a defendant is not entitled to a defensive instruction on any defense that is subject to the doctrine of confession and avoidance." *Id.* "An instruction on a confession and avoidance is appropriate only 'when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.'" *Id.* (quoting *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007)).

When arguing that he was entitled to the instruction, Browne refers to various cases explaining the circumstances in which an instruction should have been given for offenses involving the penetration of a victim. Specifically, the court of criminal appeals has explained "that penetration occurs when there is 'tactile contact beneath the fold of complainant's external genitalia,' and that it is not inaccurate 'to describe [conduct] as a penetration, so long as [the] contact with [the complainant's] anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips.'" *Cornet I*, 359 S.W.3d at 226 (quoting *Vernon*

6

*v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). Further, the court has reasoned "that 'pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact[,]' and therefore constitutes penetration in the context of sexual assault." *Id.* (quoting *Vernon*, 841 S.W.2d at 409).

In light of this analysis, Browne contends that he was entitled to the medical-care instruction because the evidence established that some of the alleged conduct occurred when he was acting as a caretaker for Anthony. Specifically, Browne refers to portions of his testimony in which he described an interaction with Anthony after Anthony had gone to the bathroom. In that exchange, Browne testified as follows:

> [Browne]: I assumed that he was doing his business. And he called me in and -- and said, David, David, . . . I need you to wipe me. I need you to wipe me. So I went into the restroom and he is sitting on the toilet.
>
> . . .
>
> [Defense Attorney]: And what happened next?
>
> . . .
>
> [Browne]: And I said, you know, let me wipe you, so -- it's a fairly small bathroom. So I had to stand kind of in front of the toilet. And I had him lean forward so I could wipe him from behind. And I started to -- and I saw that he had quite a bit of dried feces on his rear end.
>
> . . .
>
> [Defense Attorney]: And what happened next?
>
> [Browne]: So I -- I tried to wipe his rear end and -- to be thorough because of the dried feces. I couldn't get that with toilet paper, so I left him in the bathroom. I went out and around to where my wife has a changing station where she's got the wet wipes.

7

So I pulled a couple of wet wipes out. I went back into the bathroom to continue to wipe him. . . . I told him to lean forward again. I wiped his rear end. And I was wiping his rear end and I had to clean with the moist cloth. He was complaining that it hurt. I said, well, I've got to get this off or it's going to give you diaper rash and you don't want that.

[Defense Attorney]: And you're talking about wiping his bottom at this time?

[Browne]: Right, around his anus.

Accordingly, Browne asserts that when he was wiping Anthony, he was providing medical care. Moreover, although he recognizes that he expressly denied during trial that he penetrated Anthony's anus, Browne asserts that under the reasoning by the court of criminal appeals, the act of wiping Anthony could be considered penetration because it is more intrusive than external contact. In addition, Browne notes that although Anthony testified that Browne "pushed [Browne's finger] up my bottom," Anthony could have been referring to the incident described above. As further support for his argument, Browne highlights that the medical-care defense is available when the conduct did not include any contact "between the anus or sexual organ of the child and the mouth, anus, or sexual organ" of the accused, *see* Tex. Penal Code § 22.011(d), that there were no allegations regarding any contact between Anthony's anus or sexual organ and Browne's anus or sexual organ, and that the jury acquitted Browne of the counts involving any contact with Anthony's mouth.

As a preliminary matter, we note that it is not entirely clear that the prior precedent by the court of criminal appeals applies to the facts of this case. For example, in *Cornet I*, the defendant did not deny touching the victim's anus and sexual organ, testified that he was examining the victim to see if she had been the victim of sexual abuse, and admitted to the following conduct in a written statement and in his testimony: contacting the victim's labia and anus with his fingers,

8

spreading her labia "to see if her hymen was still intact," and "open[ing]" the victim's "buttocks." 359 S.W.3d at 219, 227. In addition, the defendant stated that he "remembered [his] fingers getting wet." *Id.* At trial, the appellant testified that he had "spread her cheeks" in order to ascertain whether or not she had been sexually abused. *Id.* Accordingly, a plurality of the court determined the following:

> that the[] statements, taken together, constitute evidence sufficient to establish confession in the context of confession and avoidance—that is, we think it would be reasonable for a fact-finder to infer from the appellant's defensive evidence that he admitted to penetration . . .[;]that his fingers were wet because he "reached beneath the natural fold of skin" of [the victim]'s labia and entered "an area of the body not usually exposed to view, even in nakedness"; that in order to make the hymen visible, the appellant would have to make some contact with the child's genitals that could "reasonably be regarded . . . as more intrusive than contact with her outer vaginal lips"; and that the appellant crossed the legal line demarcating penetration when he, as he testified at trial, "spread her cheeks."

*Id.* at 227 (quoting *Vernon*, 841 S.W.2d at 409).

Similarly, in *Villa v. State*, the defendant gave a statement to the police in which he admitted "that while applying medication to [the victim]'s diaper rash, he had 'put [his] middle finger in her vagina' and moved it 'back and forth probably twice." 417 S.W.3d at 459. During trial, the defendant stated that what he meant to say to the police was that he "'never put my finger in her. Yes, I put it on her, but I didn't put my finger in her at all.'" *Id.* However, the defendant also admitted during trial that he "'actually touched the [victim's] genitals.'" *Id.* The court of criminal appeals concluded that although the defendant denied penetrating the victim's vagina at trial, he "testified that he put Desitin on the red area outside the vagina" and that he "touched the [victim's] genitals." *Id.* at 462. Further, the court noted that the victim's mother and the nurse who examined

9

the victim both testified that there was "redness on [the victim's] labia minora that extended into her vaginal canal." *Id.* Accordingly, the court determined that a reasonable jury could have determined that the defendant admitted to "contact with the complainant's labia minora and" therefore "a 'penetration' of her sexual organ" and that the defendant "admitted to all elements of the offense in his trial testimony and presented evidence at trial that properly raised the medical-care defense." *Id.*

In the present case, there is no testimony from Browne that constituted an admission of the type of penetrative behavior described in *Villa* or *Cornet I*. On the contrary, Browne expressly denied during trial penetrating Anthony's anus in any manner. In fact, he testified that his "finger was never in [Anthony's] rear end." Similarly, during his interview with the police, which was recorded and admitted as an exhibit, Browne repeatedly denied throughout the entire discussion that he ever had any contact with Anthony's anus even though he admitted to improperly touching Anthony's penis. Moreover, although Browne testified that he thoroughly tried to wipe feces off of Anthony and that he wiped "around" Anthony's anus, nothing in his testimony indicated that he made any attempt to spread Anthony's anus or alluded to contact that amounted to anything more than external contact with Anthony's anus. *See Pryor v. State*, 719 S.W.2d 628, 630 (Tex. App.—Dallas 1986, pet. ref'd) (distinguishing anus from buttocks).

In light of Browne's testimony and of the distinction between this case and the cases in which the court of criminal appeals has determined that an instruction should have been given, we cannot conclude that Browne has overcome the presumption that his attorney's conduct fell within the wide range of professional and reasonable assistance; has not shown that his attorney's conduct, under prevailing professional norms, fell below an objective standard of reasonableness;

10

and has not demonstrated that the alleged error was so egregious that no competent attorney would have committed it.

Even assuming that Browne's testimony at trial could be construed as an admission of penetration as has been defined by the court of criminal appeals and that Browne's attorney should have requested an instruction for the medical-care defense, we would still be unable to conclude that the failure to request a medical-defense instruction under the facts of this case constituted ineffective assistance of counsel. Recently, the court of criminal appeals explained that "the wrongful omission of a medical-care-defense jury instruction is generally considered harmful . . . because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Cornet II*, 417 S.W.3d at 451. When explaining that statement, the court clarified that omissions have been held to be harmful "when there is a single offense tried before a jury" because "it is impossible to determine how a jury would have weighed the credibility of the evidence on a defensive issue, and, therefore, appellate courts have reversed convictions in order to permit the jury to decide whether it believes the defensive evidence." *Id.* However, the court concluded that "the omission of the medical-care-defense charge" can be harmless depending on the circumstances of a case. *See id.* at 453.

In *Cornet II*, the defendant was charged with and convicted of the offenses of aggravated sexual assault "by digital penetration" and "aggravated sexual assault of the complainant . . . by contacting her anus with his mouth," *id.* at 451, and the medical-care defense would not have been a defense to the charge involving the defendant's mouth, *id.* at 452; *see* Tex. Penal Code § 22.011(d). In light of that, the court reasoned that it was "inconceivable that the jury would have

11

found appellant guilty of causing the anus of the complainant to contact his mouth, a claim entirely denied by appellant, had it believed his claim that he was providing medical care to the complainant during the same event. It is clear that the jury believed the complainant and disbelieved appellant's claims." *Cornet II*, 417 S.W.3d at 452; *compare id.*, *with Villa*, 417 S.W.3d at 463-64 (finding that trial attorney provided ineffective assistance by failing to request medical-care instruction where defense counsel elicited testimony from defendant that could reasonably be construed as confession of all elements, where defendant was charged with aggravated sexual assault of child and indecency with child, where jury only convicted defendant of aggravated sexual-assault claim, and where court of criminal appeals explained that acquittal for indecency charge indicated that jury may have been persuaded by medical-care evidence because it found that defendant not guilty of offense that has intent to arouse or gratify as element but found defendant guilty of offense that did not have that element). Moreover, the court determined that its review of the evidence supported the idea "that the jury's finding that appellant orally contacted the complainant's anus indicates that it disbelieved the medical-care evidence." *Cornet II*, 417 S.W.3d at 453.

When reaching its determination that the omission was harmless, the court also noted that the focus of the defendant's closing arguments was "on the State's purported failure to prove that appellant penetrated the complainant's sexual organ by his finger or that he made oral contact with her anus," that the defendant "challenged the credibility of the complainant and the outcry witness," and that the defendant "did not mention the medical-care defense expressly or implicitly." *Id.* at 454. Furthermore, the court noted that the State specifically urged the jury to reject the defendant's claim that the contact at issue was for the victim's medical care. *Id.* Similarly, the court

noted that the defendant's defensive theory during trial was focused on the assertion that the State failed to prove that he penetrated the victim's sexual organ rather than on medical care, that neither the defense nor the State asked about medical care during voir dire, that the defendant's opening statement was premised on the State's failure to prove the allegations, and that the defendant argued in his opening statement that he made a mistake and behaved inappropriately. *Id.* at 454-55.

Although the issue in *Cornet II* focused on whether there was an error in the jury charge rather than an ineffective-assistance-of-counsel claim, we believe that the similarities between this case and *Cornet II* as well the analysis from that case compel a determination that there is not a reasonable probability that the results of the trial would have been different but for Browne's failure to request an instruction on the medical-care defense. As in *Cornet II*, Browne was charged with and convicted of multiple sexual offenses, some for which the medical-care defense could apply and some for which that defense is not applicable. Specifically, as set out above, Browne was convicted of two charges of aggravated sexual assault by penetrating Anthony's anus, which are subject to the defense if warranted, and with two charges of indecency with a child by contact, which are not subject to the defense. *See* Tex. Penal Code §§ 21.11, 22.021(d).

During the trial, a copy of the recording of Browne's interview was played for the jury. In that interview, Browne admitted that his wife would sometimes leave him alone with the children in the daycare, but he explained that he was never asked to change diapers. Initially and for several hours, Browne denied touching Anthony's anus and penis, but then Browne admitted that "mistakes were made," that he had remorse, that he did touch Anthony's penis after Anthony asked Browne to feel how hard his erection was, and that he squeezed Anthony's penis. However, Browne

13

claimed that the improper contact only happened once and continued to deny throughout the interview having any contact with Anthony's buttocks or anus. In the apology letter that he wrote, Browne stated that his behavior was "very wrong and should never have happened" and that he was the adult and should have known better.

After the video of Browne's interview was played for the jury, Anthony's mother was called to the stand and testified that after she and Anthony left the Brownes' home, Anthony stated that Browne would wake him up from nap time and play with his "private parts" and that Browne would "put his fingers in [Anthony's] butt." When Anthony's mother finished her testimony, Anthony was called to the stand. In his testimony, Anthony generally explained that Browne used his hands and mouth to touch Anthony's privates and that Browne pushed his finger into Anthony's bottom. Further, Anthony related that Browne inserted his finger every day that Anthony went to the daycare and that Browne sucked on Anthony's "front part." In addition, Anthony testified that Browne tried to make him touch Browne's privates with his mouth and hands. When asked about whether he ever had bathroom accidents at the daycare, Anthony admitted that he did but denied ever having one when Brown's wife was not there.

After Anthony testified and after the State rested its case, Browne was called to the stand. In his testimony, Browne denied ever touching Anthony in a sexual manner and explained that all of the allegations regarding penetration and regarding indecent contact could only have referred to a single incident that Anthony misinterpreted. Specifically, Browne testified that, as discussed earlier, he wiped Anthony after Anthony went to the bathroom. Browne also recalled that after he finished cleaning Anthony, he touched Anthony's penis. When describing this incident,

14

Browne explained that when Anthony asked him to come into the bathroom, Anthony had an erection, was making "a big deal out of it," and asked Browne to touch it. In addition, Browne recalled that after he wiped Anthony, Anthony said that he had to pee and that the following occurred:

> [B]ecause of the erection, he started peeing out all over the floor and on the cabinet and almost on me. So I pulled him up. I turned him around towards the toilet and he is just spraying all over the toilet.

> And at that point I reached around and held his penis down pointing it into the toilet so that he wouldn't spray all over the floor and the toilet.

When discussing Anthony's behavior, Browne stated that Anthony "was all giggly about that, thought that was just fun and games." Next, Browne testified that after he finished cleaning the bathroom, he realized that he "needed to use the restroom" and that when he started urinating, Anthony "barge[d] in the room and [ran] around" Browne, reached for Browne's penis, and "made very brief contact with [Browne's] penis." In addition, Browne related that he scolded Anthony and told him "that's off limits."

Given that the jury convicted Browne of four offenses, the jury clearly believed and credited Anthony's testimony, the testimony of his mother, and the admissions that Browne made to the police and disbelieved Browne's testimony that there was nothing sexual that occurred and that Anthony misconstrued Browne's attempts to clean Anthony and help Anthony go to the restroom. *See Cornet II*, 417 S.W.3d at 452. Moreover, through his testimony, Browne was able to communicate his assertion that all of the alleged offenses, including the two charges of aggravated sexual assault involving penetration of Anthony's anus and the two charges of indecency with a child

15

for which Browne was convicted, stemmed from that single incident. The medical-care defense would not have been available for the indecency charges, and it seems highly unlikely that the jury would have found Browne guilty of improperly engaging in sexual contact with Anthony and causing Anthony to engage in sexual contact "with intent to arouse or gratify the sexual desire of any person," *see* Tex. Penal Code § 21.01 (defining "sexual contact" as "touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person"), .11(a) (specifying that person is guilty of offense if he engages in sexual contact with child or causes child to engage in sexual contact), which Browne completely denied, had it believed Browne's claim that he was simply trying to clean Anthony and to help him go to the restroom, *see Cornet II*, 417 S.W.3d at 452.

In addition, during voir dire, Browne made no assertion regarding his role as a caretaker and no assertion that the conduct at issue stemmed from his giving medical care to Anthony. During trial, Browne did assert in his opening and in his closing arguments that the touching at issue was done in his role as a caretaker for Anthony and while he was attempting to help Anthony. Specifically, in his closing argument, Browne asserted that "[i]f there's dried feces on your kid's butt," you have to "push a little bit harder" or "rub a little bit harder" to help your child. However, Browne expressly and repeatedly denied ever penetrating Anthony's anus. Moreover, the primary focus of Browne's arguments during his opening and closing statements and of his questioning of witnesses focused on the defensive theories that the police compelled him to admit to behaviors that were not true, that Anthony was encouraged to make claims that were not true or misconstrued the events, and that the State had not proved its case beyond a reasonable doubt.

16

When the State cross-examined Browne, the State pointed out the inconsistencies between his testimony and the statements that he made to the police during the interview, questioned why Browne did not relate the story about helping Anthony use the restroom during the interview, and asked why he did not tell his wife the story about helping Anthony use the restroom after he had been arrested when she talked to him while he was in jail and instead admitted to her that he had engaged in inappropriate contact. Similarly, during the State's closing, the State urged the jury to disregard Browne's version of the events because Browne changed his story several times and did not mention helping Anthony go to the restroom until days after his arrest and days after admitting to improperly touching Anthony during his interview with the police.

The jury's decision to convict Browne of two charges of indecency with a child, "offense[s] to which the medical-care defense is inapplicable," "strongly indicate[s] that the jury considered and rejected [Browne]'s claim that his contact with" Anthony was for reasons related to medical care because it shows that the jury "clearly . . . did not believe" Browne's testimony that he touched Anthony only as a caretaker and that he did not penetrate Anthony's anus, touch Anthony's sexual organ, or have Anthony touch his sexual organ. *See Cornet II*, 417 S.W.3d at 454-55. "Because the totality of the record reveals the jury's implicit rejection of" Browne's version of events, we cannot conclude that there is a reasonable probability that, but for the alleged failure to request the medical-care defense, the result of the trial would have been different. *Cf. id.*

For all of these reasons, we overrule Browne's first issue on appeal.

17

*Failure to Object*

In his second issue on appeal, Browne contends that his trial counsel was ineffective for failing to object to six improper arguments made by the State. As a preliminary matter we note that Browne's ineffectiveness claims are premised on his trial attorney's alleged failures to act, and the record before this Court is not sufficiently developed to evaluate whether those alleged failures were part of a reasonable trial strategy because his trial attorney has not "been given an opportunity to respond to" the claims. *See Goodspeed*, 187 S.W.3d at 392, 394; *see also Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) (overruling issue asserting that trial counsel was ineffective for failing to make hearsay objection because record was not sufficiently developed and because attorney's "conduct could have been part of a reasonable trial strategy"); *Cueva v. State*, 339 S.W.3d 839, 892 (Tex. App.—Corpus Christi 2011, pet. ref'd) (stating that defense attorney had strategic reasons for not objecting to State's argument during its closing); *McPherson v. State*, No. 03-03-00144-CR, 2004 Tex. App. LEXIS 787, at *20 (Tex. App.—Austin Jan. 29, 2004, pet. ref'd) (mem. op., not designated for publication) (explaining that "permitting an improper comment to pass without objection would not necessarily render the entire representation ineffective"); *Lee v. State*, 874 S.W.2d 220, 225 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (concluding that defense attorney's "failure to object to the prosecutor's comments was reasonable strategy"). In any event, we do not believe that the six comments exceeded the scope of permissible jury argument.

When presenting this issue, Browne notes that the categories of proper jury argument are as follows: "(1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement."

18

*See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). In light of those categories, Browne contends that the following statements made by the State in its closing argument during the guilt or innocence phase were improper:

- At the end of the day this man is a liar;

- What he did was he touched his penis to gratify his sexual desires because that's the kind of guy he is; and

- Ultimately at the end of the day he is the most selfish type of human being you'll ever see.

Similarly, Browne highlights that during its closing in the punishment phase, the State made the following purportedly improper statements:

- There ought to not ever ever ever be any chance of him getting out of prison and not just because of . . . Browne, but for any other sick, perverted soul like this who might think about touching some little kids. Maybe, just maybe they see what happens with him and they think twice about it, maybe;

- [One of the jury panelists who was excused for cause] commented that [Browne] ought to be hung. He had it right. He hadn't seen any of the evidence, but he had sized this up pretty good. And if the law allowed it I'd ask you to do it, so -- it ought to happen to him;

- Because of his sick desires, you have these children out here, God knows how many. We know two for sure at least.

When discussing the effect of those statements, Browne contends that they were inflammatory and that since there was no instruction to disregard those statements, the jury gave Browne the maximum punishment for all of the offenses that he was convicted of.

19

Regarding the first four statements, Browne contends that those comments were improper because the State should not "inject personal opinion about the defendant's character in jury argument" and should "not use pejorative terms to refer to the defendant." *See Holland v. State*, No. 14-07-00762-CR, 2009 Tex. App. LEXIS 10, at *5 (Tex. App.—Houston [14th Dist.] Jan. 6, 2009, no pet.) (mem. op., not designated for publication) (explaining that "[i]t is improper for a prosecutor to inject personal opinion because jurors may infer that the prosecutor's opinion was based on outside information not available to the jury" but that "a prosecutor may argue her opinion concerning issues in the case so long as the opinion is based on the evidence in the record and does not constitute unsworn testimony"). In addition, Browne contends that the statement regarding Browne satisfying his sexual desire was also improper because "there was no evidence presented that . . . Browne was gratifying his sexual desires" and because prosecutors should not argue facts not in evidence.

By taking the stand and testifying, Browne's credibility was "in question, and the prosecution ha[d] the right to attack his testimony . . . so long as the opinions of counsel are based upon the facts and inferences provided by the evidence." *See Bradley v. State*, 359 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The conflicts between Browne's testimony and Anthony's testimony were sufficient to support the inference that Browne was lying. *See id.*; *cf. Adams v. State*, 813 S.W.2d 698, 699-700 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (determining that prosecutor's statement during punishment phase that defendant was "a liar" was "a reasonable deduction from the evidence" when defendant's testimony was contrary to police officer's testimony). In addition, portions of Browne's testimony were inconsistent with the statements that he made during his interview with the police.

20

Regarding the statement asserting that Browne touched Anthony to gratify Browne's sexual desires, evidence was presented during trial that Browne touched Anthony in a sexual manner on several occasions, that Browne made Anthony touch Browne's penis, that Browne encouraged Anthony to touch another child in a sexual manner, and that Browne threatened to hurt Anthony if Anthony did not touch the other child. This testimony would support an inference that Browne engaged in the behavior at issue in order to gratify his sexual desires. *See DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.—Austin 2001, pet. ref'd) (explaining that intent may be inferred from acts, words, and conduct of defendant as well as circumstances in which defendant's actions occurred); *see also Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (stating that jury could have inferred intent to gratify sexual desire from defendant's act of touching child's genitals).

When the State called Browne "the most selfish type of human being," the State also described Browne's behavior as support for that assertion. Primarily, the State asserted that it was selfish of Browne "as a grown man" to take "advantage of a four-year-old child for his own sexual satisfaction." The word "selfish" is defined as "concerned excessively or exclusively with oneself: seeking or concentrating on one's own advantage, pleasure, or well-being without regard to others." *See Webster's Third New Int'l Dictionary* 2060 (2002). Given the vulnerability and innocence of young children and the near universal instinctual concern for protecting the welfare of children, evidence establishing that someone would take advantage of a young child to satisfy his own sexual desires without concern for any detrimental impact on the child would seem to support the State's deduction.

21

Similarly, when the State asserted during the punishment phase that Browne should be sent to prison for life for his actions and to discourage "any other sick, perverted soul like" Browne from engaging in the kinds of criminal activity that Browne did, the State was making a permissible recommendation "that the jury assess severe punishment . . . based on the evidence" suggesting that Browne committed multiple sexual offenses against Anthony and another child that testified during the punishment phase, *see Holland*, 2009 Tex. App. LEXIS 10, at *5 (explaining that State may recommend that jury impose severe punishment, including life imprisonment, "when it is based on the evidence"), and making a plea for law enforcement, *see Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) (explaining that "[a] proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general"); *Bautista v. State*, 363 S.W.3d 259, 265 (Tex. App.—San Antonio 2012, no pet.) (stating that "[a] proper plea for law enforcement may be stated in several ways—as an argument about the impact of the jury's verdict on the community, or the relationship between the jury's verdict and deterrence of crime in general"). Moreover, the evidence supporting an inference that Browne touched Anthony to gratify Browne's sexual desires would also support the State's characterization of Browne as a "sick, perverted" person. The term "sick" has been defined as "spiritually or morally unsound or corrupt," and the term "perverted" is defined as "having or showing sexual desires that are considered not normal or acceptable." *See Webster's Third New Int'l Dictionary* 1688, 2110 (2002).

Turning to the remaining statements made by the State in its closing argument during the punishment phase, Browne asserts that the statement indicating that Anthony may not have

22

been the only victim and that there were at least two victims were improper because they went beyond crimes alleged in indictment and were not supported by the evidence. *Cf. Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio 2011, no pet.) (recognizing that "[i]t is well-settled" that prosecutor may not refer to evidence outside record during argument). During the punishment phase, as mentioned above, another victim testified regarding sexual offenses that Browne committed against her while she was at the daycare. In particular, T.L. testified that Browne removed her clothing and touched her "bottom" every day that she was at the daycare. Accordingly, before the State made the comments, testimony was introduced establishing that Browne had victimized Anthony and T.L. and that Browne asked Anthony to sexually touch another child at the daycare. Moreover, the evidence presented during trial established that several children attended the daycare in the years that it was open, and in the video recording of Browne's interview with the police, the officers discussed another potential victim from the daycare that was the subject of another investigation.

Furthermore, when asserting that the comments about the other victims was inappropriate, Browne relies on *Melton v. State*, but that case concerned a situation in which the State attempted to convince a jury *to convict* a defendant based on statements regarding offenses that were not alleged in the indictment and that were "totally outside the record." *See* 713 S.W.2d 107, 114 (Tex. Crim. App. 1986). In this case, the comments were made after Browne had been convicted and referred to offenses that witnesses testified about. *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1) (allowing State and defendant to offer evidence during punishment phase pertaining "to any matter the court deems relevant to sentencing," including "evidence of an extraneous crime or bad act that

23

is shown beyond a reasonable doubt by evidence to have been committed by the defendant"); *cf. Cedillo v. State*, 901 S.W.2d 624, 627 (Tex. App.—San Antonio 1995, no pet.) (explaining that different policies govern relevancy determinations during punishment phase). For these reasons, we believe that the comments did not exceed the scope of permissible jury argument.

Finally, Browne points to the comments in which the State recalled that a prior panelist indicated that individuals who sexually assault children should be given the death penalty and in which the State also asserted that if the law allowed for the death penalty in this type of case, it would ask the jury to impose that sentence on Browne. Browne urges that the comment concerning a jury panelist's prior statement was improper because it was an argument based on something that was not in evidence in the case and that reference to an excluded panelist's comments is "egregiously improper."

As support for his argument that the comments were improper, Browne relies on *Adams v. State*, 869 S.W.2d 674 (Tex. App.—Beaumont 1994, pet. ref'd). However, we find Browne's reliance on *Adams* to be misplaced. In *Adams*, two jury panelists were successfully challenged for cause after stating that they knew some of the witnesses that would be called in that case and that they would give a lot of credit to their testimonies. *Id.* at 676-77. During the State's closing in the guilt or innocence phase, the State mentioned that the excluded panelists described the witnesses as credible and indicated that they would believe those witnesses. *Id.* at 676. On appeal, the reviewing court determined that those comments did not fall within any of the categories of permissible jury argument and were improper because the comments "suggested that a disputed factual matter—the truthfulness of the testimony of the State's witnesses—was proved by the preconceived opinions of people in the same position as the members of the jury." *Id.* at 677.

24

In this case, the State's reference to a comment by an excused jury panelist did not suggest that resolution of any disputed factual matter was proven by the panelist's preconceived opinion; on the contrary, the State recalled the panelist's personal belief that people who sexually victimize children should be given the death penalty. Moreover, the statement was made in a more global call for law enforcement and for the imposition of the maximum sentence possible in light of the seriousness of the crimes at issue. In particular, the State mentioned the excluded panelist's belief, discussed how the law used to allow for the death penalty for cases in which defendants were convicted of sexually assaulting children, mentioned how the Supreme Court prohibited the death penalty in these cases under "evolving standards of decency," described the offenses at issue, asked the jury to consider the impact those crimes will have on Anthony, and requested the jury to impose the maximum punishment possible for the four offenses. Although the comments by the State may not have been advisable, we cannot conclude that they exceeded the scope of permissible argument.

For the reasons previously given, we conclude that the six statements referred to by Browne did not exceed the scope of permissible jury argument. Accordingly, we cannot conclude that Browne's trial attorney was ineffective for having failed to object to those statements. *See Richards v. State*, 912 S.W.2d 374, 379 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (explaining that "an attorney's failure to object to proper argument cannot be ineffective assistance").

Having determined that Browne has not shown that his trial attorney provided ineffective assistance of counsel, we need not further address the matter, but we do emphasize that ineffectiveness challenges are considered in light of "the totality of the representation" provided by the attorney. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Moreover, we note

25

that before trial Browne's attorney moved to suppress the video recording of Browne's interview with the police and that during voir dire Browne's attorney effectively questioned the prospective panelists regarding any biases that they might have and moved to exclude several panelists for cause. During the trial, Browne's attorney urged the district court to invoke the rule, successfully objected to testimony from Officer David Schroeder as hearsay, objected to the admission of the recording of Browne's conversation with the police in which he admitted to touching Anthony, objected to the admission of recordings of Browne that were made while he was talking to his wife while he was in jail, objected to questions posed by the State during Browne's testimony, and brought to the district court's attention when a witness was in the courtroom in violation of the rule. In addition, Browne's attorney informed the district court that Browne wanted to testify and asked the district court to admonish him. When making her closing argument, Browne's attorney emphasized the high burden on the State, discussed the conditions of Browne's interview with the police and how he voluntarily chose to talk with the police, noted the length of time between when the offenses were alleged to have occurred and when the outcry statement was made, asserted that Anthony testified that the alleged conduct involving oral contact did not happen, and discussed Browne's testimony stating that the events occurred when he was acting as a caretaker by helping Anthony go to the restroom.

Furthermore, as we observed in the first issue, Browne's attorney pursued several defensive strategies during the first phase of the trial, including urging that the police compelled Browne to admit to conduct that did not happen and that Anthony was persuaded to make false accusations or misconstrued events that occurred. Regarding the theory that Browne was compelled

26

to confess to things that were not true, Browne's attorney asserted in her opening statement that the police are trained to "interrogate someone to get them to take the most innocent of caretaking gestures and turn it into something dirty." Similarly, Browne's attorney extensively questioned one of the officers present during the interrogation, Officer Schroeder, about his interrogation techniques and training and about some of the techniques that he used on Browne. Moreover, during Officer Schroeder's testimony, Browne's attorney emphasized that Browne repeatedly denied that anything happened during the first two hours of the interrogation. After Browne decided to testify, his attorney questioned him about why he admitted to improper conduct during his interview with the police, and Browne related that he was exhausted during the interview, that the police frightened him by "making accusations" that were not true, that he admitted to having done things that were not true because the police told him that it would "be better for" him, that he did not feel like he was free to leave the interview, that he only wrote the letter apologizing to Anthony because the police said that writing a letter might help "with the DA or . . . people that were accusing" him, and that he mostly wrote what Officer Shroeder suggested should be in the letter. In addition, during her closing, Browne's attorney emphasized the length and conditions of Browne's interview with the police and emphasized how he did not feel free to leave the interview.

Regarding the theory that Anthony misconstrued the bathroom incident, Browne's attorney asked Officer Schroeder if children might misinterpret something that a caretaker does. Similarly, when cross-examining Anthony's mother, Browne's attorney attempted to undermine the credibility of the outcry by implying that Anthony might not remember the events clearly because the statement Anthony made concerned events occurring when Anthony was supposed to be taking

27

a nap. During her cross-examination of Anthony, Browne's attorney questioned Anthony about how often he talked about the incidents with his mother and about who else he talked to about those events. When answering those questions, Anthony said that his mother talked about it "like every month" or "every week" and that he talked about the incidents with his dad, his uncle, and his grandmother. Finally, in her closing argument, Browne's attorney challenged the accuracy of Anthony's memory, emphasized how various members of Anthony's family repeatedly talked with Anthony about the alleged incidents and might have confused him, and urged that the act of wiping a "child's behind" if taken out of context and if talked about by several people years later could lead a child to believe that something inappropriate had happened.

During the punishment phase, Browne's attorney emphasized in her opening statement Browne's remorse and later questioned T.L. regarding her recollection of the events framing her claim that Browne assaulted her. When making her closing argument, Browne's attorney highlighted that Browne was 56 at the time of conviction and asked the jury to consider in their assessment how old he would be when he was released. Finally, Browne's attorney mentioned that Browne expressed concern during his interview for how his actions had affected Anthony and Anthony's family. In summation, "the totality of the representation" provided by Browne's trial attorney establishes that the representation was not ineffective. *See id.*

For all of these reasons, we overrule Browne's second issue on appeal.

**Instruction to Cure**

In his third issue on appeal, Browne contends that the district court "erred by failing to explicitly direct the jury to not consider punishment when it was raised by the prosecutor in

28

his argument" during the guilt or innocence phase. During its closing, the State summarized the evidence presented at trial demonstrating Browne's criminal conduct. In particular, the State discussed how Anthony told his mother that Browne "put his fingers in my butt. He touched my privates. He made me touch him, those things." Immediately after providing this summary, the State explained that "at the end of the day, if that's all this case consisted of, that's more than enough to be beyond a reasonable doubt to send this man to prison for the rest of his life because he's a child molester of the worst kind."

As a preliminary matter, it does not appear that Browne preserved this complaint for appeal. Although Browne objected to the argument made by the State and asked for an instruction to disregard the comments, he did not move for a mistrial after the instruction to disregard was given. The court of criminal appeals has explained that the preferred procedure for preserving a complaint regarding allegedly improper jury argument is for the party to object, to request an instruction to disregard, and to move for a mistrial if the instruction is insufficient. *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Although the court explained that following the sequence in order "is not essential to preserve complaints for appellate review," the court clarified that "[t]he only essential requirement to ensure preservation is a timely, specific request that is refused by the trial court." *Id.*; *see also id.* (explaining that if harm caused by statements is incurable, motion for mistrial is sufficient to preserve error without having to request instruction to disregard). In this case, the district court implicitly sustained Browne's objection and then gave an instruction to disregard as requested by Browne, and Browne made no indication that the instruction was insufficient.

29

On appeal, Browne acknowledges that the district court gave an instruction to the jury regarding the statement above in response to his objection, but he contends that the instruction was "too vague to properly cure the error." We disagree. The district court instructed as follows: "Ladies and gentlemen, you are to base your decision only upon the evidence. You are specifically prohibited from considering the effect of your judgment at this time." Although the instruction may not have used the word "disregard," the directive was functionally equivalent because it directed the jury that it could not consider the amount of punishment that Browne might receive (i.e. the effect of a judgment) if he was found guilty. In any event, Browne did not object to the instruction provided by the district court.

Assuming for the sake of argument that the Browne preserved for review his complaint regarding the State's discussion of punishment during the guilt or innocence phase, we note that most of the cases relied on by Browne and by the State as support for their arguments pertinent to this issue are procedurally distinguishable. Specifically, those cases seem to involve situations in which there was a lesser-included offense and a greater offense and in which there was concern that providing information regarding the level of the offenses or the permissible punishment range for those nested offenses might encourage "the jury to convict on the basis of the amount of punishment, rather than the facts supporting guilt." *See Bruton v. State*, 921 S.W.2d 531, 536 (Tex. App.—Fort Worth 1996, pet. ref'd); *see also Hart v. State*, 581 S.W.2d 675, 678-79 (Tex. Crim. App. 1979) (finding no error where State mentioned that lesser-included offense was misdemeanor but argued for jury to determine that defendant was guilty "on the facts"); *McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976) (explaining that harm was not that jury was

30

informed of punishment range and was instead argument that defendant "should not be convicted of manslaughter because it carried a lesser punishment, but should be convicted of murder because of the greater penalty" and "was a plea to the jury to consider the amount of punishment, rather than the facts"); *Villarreal v. State*, No. 05-12-00022-CR, 2013 Tex. App. LEXIS 7142, at *18 (Tex. App.—Dallas June 11, 2013, no pet.) (not designated for publication) (concluding that "State's argument permissibly urged the jury to convict Villarreal of the more serious third-degree felony charged in the indictment instead of the lesser-included offense and was responsive to evidence in the record"); *Mendoza v. State*, No. 05-11-01069-CR, 2012 Tex. App. LEXIS 10005, at *16 (Tex. App.—Dallas Dec. 4, 2012, no pet.) (not designated for publication) (determining that State's argument did not urge jury to convict of greater offense rather than lesser one "because of the difference in punishment"); *Freeman v. State*, 985 S.W.2d 588, 589 (Tex. App.—Beaumont 1999, pet. ref'd) (deciding that reversible error existed where State informed jury during its closing that jury instruction would have charge for lesser offense of indecency with child and aggravated sexual assault and explained different punishment ranges for those offenses).

In this case, there were no lesser-included offenses, and the State only mentioned the available punishment for aggravated sexual assault of a child. Accordingly, the State was not attempting to encourage the jury to convict Browne of a greater offense based on the punishment range rather than on the evidence. On the contrary, the State's argument occurred after summarizing the evidence presented during the trial and asserted that the evidence was sufficient to convict Browne of aggravated sexual assault of a child. *See Jackson*, 17 S.W.3d at 673 (explaining that summation of evidence is proper jury argument); *Barnes v. State*, No. 01-01-01086-CR, 2002 Tex.

31

App. LEXIS 7602, at *3-4 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.) (not designated for publication) (noting that not every reference to punishment during guilt or innocence is improper and concluding that trial court did not err by overruling objection to isolated statement "[i]f ya'll convict him, he can be locked up" during closing because statement was "responsive to evidence"); *see also Denison v. State*, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983) (emphasizing that challenge to jury argument is considered "in the context in which it appears"). Moreover, during voir dire, both the State and Browne informed the potential jury members about the punishment range for the aggravated-sexual-assault charges.

Even assuming that the comment made by the State constituted improper jury argument, we note that immediately after the State made the statement at issue, the district court gave the instruction to the jury regarding the State's comment. Generally speaking, "[a]n instruction to disregard" is sufficient to cure error stemming from improper jury argument. *Bautista*, 363 S.W.3d at 265; *Bruton*, 921 S.W.2d at 535; *see also Bruton*, 921 S.W.2d at 535 (assuming for sake of argument that statement explaining that crime was second-degree felony and that punishment range was two to twenty years was improper jury argument). When the trial court provides an instruction to disregard, the error is reversible only when the statements are "so manifestly improper as to inflame and prejudice the minds of the jury." *Bruton*, 921 S.W.2d at 536.

Nothing in the record of this case suggests that the State's reference to a possible punishment was not cured when the district court gave its instruction to disregard. The State only mentioned punishment once and did not refer to punishment after the district court gave its instruction to disregard. *Compare Taylor v. State*, No. 03-96-00396-CR, 1997 Tex. App. LEXIS

32

300, at *3 (Tex. App.—Austin Jan. 23, 1997, no pet.) (not designated for publication) (determining that any prejudicial effect stemming from single reference that lesser offense is misdemeanor and carried lower punishment was cured by trial court's instruction), *and Bruton*, 921 S.W.2d at 536 (concluding that single reference to punishment range "was not of such a damning character that it would be impossible to remove the harmful impression from the minds of the jurors"), *with McClure*, 544 S.W.2d at 393 (finding reversible error where State repeatedly referred to possible punishment "over objections from defense counsel and instructions by the court").

For all of these reasons, we overrule Browne's third issue on appeal.

## Motion for Mistrial

In his final issue on appeal, Browne contends that the district court erred by denying his motion for a mistrial. At the end of the State's closing argument during the guilt or innocence phase, the State asserted that Browne "is a sick and sorry individual and he's guilty of six counts of child molesting" and requested the jury "to find him guilty of each of them." Before the State requested the jury to find Browne guilty, Browne interrupted the State by saying "Judge" but did not say any other words before the State finished its statement and closed. After the State closed, the district court released the jury to allow it to begin its deliberations. Once the jury left the room, Browne moved for a mistrial based on the comments set out above. After considering the request, the district court denied the request for a mistrial. On appeal, Browne contends that the State made the comments at the end of its closing in an attempt to prevent him from objecting to the comments and from obtaining a ruling from the district court. Accordingly, Browne contends that the district court should have granted his request for a mistrial. In response, the State asserts that Browne failed

33

to preserve any complaint regarding those comments by failing to object when the statements were made and by failing to request an instruction to disregard before requesting a mistrial after the jury left the courtroom. *See Devoe v. State*, 354 S.W.3d 457, 472 (Tex. Crim. App. 2011) (determining that defendant preserved nothing for review regarding State's conduct during trial because defendant failed to "object at the earliest opportunity" and instead waited until jury had retired to begin deliberating).

Before ruling on the motion, the district court noted that the allegedly improper comments were made at the end of the State's closing and that Browne was "precluded from making the objection" because the State "turned around and sat down." In light of the district court's characterization and of the record before this Court, we will assume for the sake of argument that Browne's complaint was preserved for appeal.

Appellate courts review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard of review. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A mistrial will only be required under extreme circumstances where the prejudice is incurable. *Archie*, 221 S.W.3d at 699; *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (explaining that mistrial may be used as "remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile'" (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999))).

Although it is generally inappropriate for the State to use derogatory characterizations of a defendant, reviewing courts consistently overrule claims asserting that the State used improper characterizations when those characterizations are supported by the record. *See, e.g.*, *Barnard v. State*, 730 S.W.2d 703, 718 (Tex. Crim. App. 1987) (concluding that State's description of defendant as "mean person" was reasonable deduction from evidence); *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985) (determining that there was no error stemming from prosecutor's evaluation of defendant as "moral vacuum" and as having no heart or conscience); *Williams v. State*, No. 02-03-00313-CR, 2005 Tex. App. LEXIS 1870, at *12, *14-15 (Tex. App.—Fort Worth Mar. 10, 2005, pet. ref'd) (mem. op., not designated for publication) (explaining that statement that defendant was "plain bad" was properly supported by evidence of brutal assault); *Resendez v. State*, No. 14-99-01374-CR, 2001 Tex. App. LEXIS 4614, at *2-4 (Tex. App.—Houston [14th Dist.] July 12, 2001, pet. ref'd) (not designated for publication) (concluding that characterization of defendant as "monster" was supported by repeated sexual assaults of young relative); *Ahmed v. State*, No. 05-97-00874-CR, 1999 Tex. App. LEXIS 6519, at *29-30 (Tex. App.—Dallas Aug. 30, 1999, pet. ref'd) (not designated for publication) (determining that characterization of defendant as "sociopath" was supported by facts of crime, bad reputation, and school suspensions); *Belton v. State*, 900 S.W.2d 886, 898 (Tex. App.—El Paso 1995, pet. ref'd) (concluding that reference to defendant as "animal" was reasonable deduction from evidence).

In this case, the State referred to Browne as "a sick and sorry individual." One definition for "sick," as mentioned earlier, explains that the term means "spiritually or morally unsound or corrupt," and "sorry" is defined as "inspiring sorrow, pity, scorn, or ridicule." *See*

35

*Webster's Third New Int'l Dictionary* 2110, 2175 (2002).  As summarized above, the evidence presented during the trial demonstrated that Browne sexually assaulted and inappropriately touched Anthony and another child on multiple occasions at the daycare run by his wife.  In fact, both victims testified that the incidents occurred often.  Furthermore, Anthony testified that Browne encouraged him to molest one of the other children at the daycare and threatened to hurt him if he did not.  In light of the evidence presented at trial, we must conclude that the statements made by the State were supported by the record and, therefore, cannot conclude that the district court abused its discretion by denying Browne's motion for mistrial.

For these reasons, we overrule Browne's final issue on appeal.

## CONCLUSION

Having overruled all four of Browne's issues on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   December 31, 2015

Publish