# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00269-CR[1]

**Clyde Everett Reed, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-16-904044, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clyde Everett Reed was charged with two counts of aggravated sexual assault. *See* Tex. Penal Code §§ 22.021(a)(1)(A)(i), (ii), (a)(2)(A)(ii), (iv), (e) (setting out elements of offense of aggravated sexual assault and explaining that offense is first-degree felony). In addition, the indictment contained three enhancement paragraphs alleging that Reed had previously been convicted twice of the felony offense of burglary of a habitation and convicted of the felony offense of sexual assault of a child. *See id.* § 12.42 (elevating permissible punishment range for repeat-felony

---

[1] The notice of appeal for this case was originally filed in this Court in December 2016, and the case was subsequently transferred to the El Paso Court of Appeals that same month in compliance with a docket-equalization order issued by the supreme court. *See* Misc. Docket No. 16-9175, Transfer of Cases from Courts of Appeals (Dec. 13, 2016); *see also* Tex. Gov't Code § 73.001 (authorizing transfer of cases). In April 2018, the supreme court issued another order transferring back to this Court this case and thirty eight other cases that had also been previously transferred to the El Paso Court but had not reached a final disposition. *See* Misc. Docket No. 18-9054, Transfer of Cases from Courts of Appeals (Tex. Apr. 12, 2018).

offenders). At the end of the guilt-or-innocence phase, the jury found Reed guilty of both offenses. During the punishment phase, the jury found the enhancement allegation regarding Reed's previous conviction for sexual assault of a child to be true. Accordingly, under the terms of the Penal Code provision pertaining to repeat-felony offenders, Reed's punishment was automatically assessed at life in prison. *See id.* § 12.42(c)(2) (providing that punishment for aggravated sexual assault is "imprisonment . . . for life" if defendant has previously been convicted of sexual assault). The district court rendered its judgment of conviction in accordance with the jury's verdicts. On appeal, Reed contends that the district court erred by denying his motion for a mistrial. We will affirm the district court's judgment of conviction.

## BACKGROUND

As set out above, Reed was charged with two counts of aggravated sexual assault. Both counts involved the same alleged victim, "Stacy Cooke."[2] During the trial, the State called various witnesses to the stand, including several law-enforcement officers and Cooke. In her testimony, Cooke stated that she heard noises in her apartment on the night in question and went to investigate. Further, she explained that she saw standing in her living room an African American man whom she did not know. In addition, Cooke testified that the man sprayed her with pepper spray and pushed her into her bedroom. Moreover, Cooke related that the assailant pushed her onto the bed, placed a knife against her throat, threatened multiple times to kill her, covered her face with one of her boyfriend's black shirts, made her spread her legs, and inserted his fingers into her vagina.

---

[2] Stacy Cooke is the pseudonym used in the underlying proceedings to refer to the victim, and we will similarly refer to the victim by that name.

2

Additionally, Cooke stated that the man forced her to perform oral sex on him, pulled his penis out of her mouth before ejaculating, and placed her in a closet before leaving her home.

After Cooke finished her testimony, Officer Jeff Dwyer and Detective Enrique Robledo were called to the stand to discuss the investigation of the offense. In his testimony, Officer Dwyer explained that he responded to a 911 call regarding an alleged sexual assault and that he found inside Cooke's apartment a shirt matching the description of the black shirt that the assailant allegedly covered Cooke's face with. Moreover, Detective Robledo testified that a buccal sample was taken from Reed as part of the investigation.

In addition to calling the officers discussed above to the stand, the State called as witnesses several individuals involved in testing and collecting evidence in this case. First, the State called Alejandra Gil to the stand, and she testified that she was a serologist, that her job required her to collect fluid samples from evidence for later testing, and that she collected "four stains" from the black shirt collected during the investigation. Next, the State called Ross Kirkendoll, and he testified that he is a forensic scientist, that he performed DNA testing on cuttings from the black shirt, and that semen was present on those samples. In addition, Kirkendoll explained that Cooke and her boyfriend could be excluded as potential contributors to the samples, that Reed could not be excluded as a contributor to the samples, that the DNA profile "matched" Reed, and that "the probability of randomly selecting an unrelated individual sharing the DNA profile from the evidence" was "one in 4.5 sextillion in the African-American population."

At the end of the guilt-or-innocence phase, the jury determined that Reed was guilty of the alleged offenses.

During the punishment phase, the State called Officer Joe Nichols to the stand. In his testimony, Nichols related that he was "an investigator with the Travis County District Attorney's Office," that he had received extensive training in fingerprint analysis, and that he personally "took the defendant's fingerprints and put them on a fingerprint card." Further, Officer Nichols explained that when someone is convicted of an offense, a penitentiary packet or "pen packet" is created "[a]s part of an inmate's overall record," and Officer Nichols stated that those packets will have the defendant's "booking photograph, his fingerprints, [and] the charges that he had previous convictions for." Finally, Officer Nichols testified that he examined the packets for the three prior offenses that the State alleged that Reed had committed and that the fingerprints present in all of those packets matched the fingerprints that he took from Reed in this case. The three packets were admitted into evidence as exhibits. Those exhibits include judgments of conviction for an individual with Reed's name along with photographs of the convicted individual.

When presenting its closing arguments in the punishment phase, the State urged jurors to "follow the law" and argued that the jury should determine that Reed "is the same person that you have all of those [prior] judgments on" based on the testimony from Officer Nichols as well as on the jury's own examination of the prior judgments. Afterwards, the following exchange occurred:

> [State]: [L]adies and gentlemen, these pen packs are all together. You either believe all of them or you believe none of them. And if you believe none of them, then you are not doing your duty as a juror in this case. You are not following your oath—
>
> [Reed]: I'm going to object, Your Honor. That's improper argument for her to make—draw a conclusion about . . . admonishing the jury.
>
> [Court]: Okay. Ladies and gentlemen, it is your decision as to what you will believe, and it is up to you to believe these enhancement paragraphs to be true or not to be

4

true.  And the burden that you have to find, that you have them to be true beyond a reasonable doubt.  And that is your decision.

Thank you.

[Reed]: I'm going to ask that they be ordered to disregard that comment that was just made by the prosecutor.

[Court]: All right.  You'll be—you'll follow the instructions as given by the Court.  It's up to you.  All right?

[Reed]: And I move for a mistrial.

[Court]: And that's denied.  Thank you.

Following that exchange, the State continued its closing arguments, encouraged the jury to follow the law, summarized the evidence presented at trial, and informed the jury that if they believed that Reed was found guilty of the prior sexual-assault conviction, then the jury was statutorily obligated to sentence Reed to life in prison.  After deliberating, the jury found to be true the allegation regarding the prior sexual-assault conviction and sentenced Reed to life in prison.

## DISCUSSION

In one issue on appeal, Reed asserts that the district court "erred in denying [his] motion for mistrial" because the State presented improper jury argument during the punishment phase that "violated [his] constitutional right to due process by arguing . . . that if the jury did not find the enhancement paragraphs as alleged in the indictment to be true[,] they would be violating their duty as jurors."  Moreover, Reed contends that the comments made by the State improperly conveyed to the jury that the State "had proven the alleged prior convictions and that there was no need to consider the evidence presented any further."  Furthermore, although Reed acknowledges

5

that the district court provided to the jury an instruction to disregard the allegedly improper argument made by the State, he urges that the district court's decision to deny his motion for a mistrial should still be reversed because "the statement was so inflammatory that its prejudicial effect cannot reasonably be removed by such admonition." Finally, Reed contends that he was harmed by the improper argument because it resulted in the jury imposing an automatic life sentence for the two charged offenses due to the jury's determination that he had previously been convicted of sexual assault. *See* Tex. Penal Code § 12.42(c)(2).

"Appellate courts review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard of review." *Browne v. State*, 483 S.W.3d 183, 203 (Tex. App.—Austin 2015, no pet.). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A mistrial will only be required under extreme circumstances where the prejudice is incurable. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (explaining that mistrial may be used as "remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile'" (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999))).

In resolving the issue presented on appeal, we must first determine whether the district court erred by failing to grant the mistrial before addressing whether the error, if any, harmed Reed. *See Hawkins*, 135 S.W.3d at 76-77 (explaining that because trial court sustained objection

6

and granted request for instruction to disregard, "[t]he only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial," that parties' framing of issue as one involving harm was incorrect, and that "[a] harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake"). "Nevertheless, 'whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis.'" *Archie*, 221 S.W.3d at 700 (quoting *Hawkins*, 135 S.W.3d at 77). In performing a harm analysis pertaining to improper jury arguments, reviewing courts consider the following: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Berry v. State*, 233 S.W.3d 847, 858-59 (Tex. Crim. App. 2007). When the allegedly improper argument was made during the punishment phase, courts "analyze the third factor with regard to the certainty of the punishment assessed." *Archie*, 221 S.W.3d at 700.

For the purpose of resolving the issue on appeal, we will assume for the sake of argument that the State's comment exceeded the scope of permissible jury argument. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (listing types of permissible jury argument). However, we note that the State's comment was brief in duration and was only made a single time. *See Archie*, 221 S.W.3d at 700.

Furthermore, although Reed contends that the comments by the State violated his due process rights and were so inflammatory that the district court's instructions could not have cured the error, we have been unable to find any support for the proposition that the comments at

7

issue here could not be cured by the instruction to disregard. *See Thompson v. State*, 89 S.W.3d 843, 850-51 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (explaining that "improper jury argument is *incurable* if the argument (1) is extreme, improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and (2) as a result, is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard" and concluding that comment was incurable where State alluded to jury about "something important that I cannot tell you about," urged jury to "[t]rust me" and to give defendant more than ten-year sentence, and suggested that if jury gave less than ten-year sentence, something bad would happen); *see also Miller v. State*, 741 S.W.2d 382, 391-92 (Tex. Crim. App. 1987) (noting "that improper argument may present a Fourteenth Amendment due process claim if the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process" but concluding that improper statements by State were not "so prejudicial as to reflect a violation of due process or due course of law to the extent that they deprived appellant of a fair and impartial trial").[3]

---

[3] As support for his assertion that the statements at issue were so inflammatory that an instruction to disregard could not cure the alleged error, Reed points to several prior appellate decisions, but we have found nothing in those opinions to support a determination that the statements at issue in this case warrant reversal. *See, e.g.*, *Wesbrook v. State*, 29 S.W.3d 103, 115-16 (Tex. Crim. App. 2000) (concluding that State's jury argument concerning statement that defendant made to police after his arrest but was not admitted into evidence was improper but not harmful because instruction to disregard had been given and because "comment was not so flagrant that the instruction to disregard was ineffective"); *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985) (determining that following closing argument by State did not harm defendant: "'[T]hat is a moral vacuum. He has no conscience, no heart, no recognition of right or wrong. You are perched on the rim of hell, looking deep into it"); *Blansett v. State*, 556 S.W.2d 322, 328 (Tex. Crim. App. 1977) (deciding that statement by prosecutor that another person had been convicted of same offense was improper but not harmful, particularly in light of fact that trial court gave instruction to disregard).

Moreover, Reed promptly objected to the statements, and the district court granted Reed's request for an instruction to disregard and repeatedly instructed the jury that they and they alone were tasked with deciding whether the pen packets were for prior offenses committed by Reed. *See Archie*, 221 S.W.3d at 700; *see also Schirmer v. State*, No. 03-97-00822-CR, 1999 WL 331696, at *4 (Tex. App.—Austin May 27, 1999, no pet.) (not designated for publication) (stating that reviewing "court presumes that a trial court's instruction to disregard will be followed by the jury"). In addition, the district court reminded the jury that before they could consider the prior convictions for punishment purposes, they must believe that Reed committed the prior offenses beyond a reasonable doubt, and similar instructions were included in the jury charge.

Additionally, as summarized above, Officer Nichols described his extensive training regarding fingerprint examinations, explained that he personally took a set of fingerprints from Reed for comparison purposes, and testified that those fingerprints matched the fingerprints on all three pen packets. Moreover, the jury was able to observe that the pen packets pertained to convictions for someone with Reed's same name and to look at the pictures from each of the three pen packets and compare those photos with Reed's appearance at trial. In light of the strength of the evidence linking Reed to the pen packets, "'it is likely that the same punishment would have been assessed regardless of the improper comment.'" *See Archie*, 221 S.W.3d at 700 (quoting *Archie v. State*, 181 S.W.3d 428, 432 (Tex. App.—Waco 2005), *rev'd on other grounds*, 221 S.W.3d 695).[4]

---

[4] In his brief, Reed notes that the jury charge on punishment instructed the jury that if it found beyond a reasonable doubt that he previously committed the offense of sexual assault of a child, then the jury did not need to make a specific determination regarding whether Reed committed the prior burglary offenses because Reed's punishment would automatically be assessed at life in prison based on the jury's finding about the prior sexual-assault conviction. *See* Tex. Penal Code

9

For these reasons, we must conclude that the district court did not abuse its discretion by failing to grant Reed's motion for mistrial and, therefore, overrule Reed's issue on appeal.

**CONCLUSION**

Having overruled Reed's issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: May 23, 2018

Do Not Publish

---

§ 12.42(c)(2). With the preceding in mind, Reed insists that the State "hoped to avoid the possibility of the jury scrutinizing the evidence associated with all of the alleged prior convictions and deciding the allegations had not been proven" by arguing "in favor of a Charge of the Court on Punishment that instructed the jury to first consider [the sexual assault] enhancement paragraph . . . of the indictment and if finding that paragraph to be true, not go on to consider the other enhancement paragraphs." Although we do not need to make any specific determination regarding this assertion to resolve the issue presented on appeal, we do note that the district court explained during the charge conference that it believed that the order was proper as "a matter of efficiency" because Reed's punishment would be automatically set if the jury found the prior sexual-assault-conviction allegation to be true.