**Opinion filed January 29, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00004-CR

_____

## JOSHUA BRADLEY JEFFER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 27225A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Joshua Bradley Jeffer of two counts of sexual assault against his then wife, K.J. *See* TEX. PENAL CODE ANN. § 22.011(a)(1) (West Supp 2020). The jury assessed his punishment at confinement for a period of two years in the Institutional Division of the Texas Department of Criminal Justice on count one and confinement for five years in the same division on count two—with the sentences to run concurrently.

Appellant brings two issues on appeal. In his first issue, Appellant asserts that he received ineffective assistance of counsel. In his second issue, Appellant contends that the trial court erred in denying his motion for new trial. We affirm.

*Background Facts*

The indictment charged Appellant with two counts of sexual assault of K.J. Appellant was charged in count one with intentionally and knowingly causing the penetration of the female sexual organ of K.J. with Appellant's hand, without K.J.'s consent; the indictment alleged that Appellant compelled K.J. to submit and participate by the use of physical force and violence. Appellant was charged in count two with the same conduct as count one, but count two alleged the use of Appellant's male sexual organ rather than his hand. Both counts were alleged to have occurred on or about July 14, 2016. Appellant and K.J. married on February 17, 2016. However, K.J. had filed for divorce prior to these incidents.

K.J. testified that, on July 14, 2016, she was at home asleep when Appellant came home and sexually assaulted her. K.J. woke up when Appellant placed his hand on her face, covering her nose and mouth so that K.J. could not breathe. Appellant climbed into the bed, wrapped his arm and a leg over K.J. and began rubbing her body. He tried to put his hand down K.J.'s pants, but she told him "no" and swatted his arm away.

K.J. attempted to get out of the bed, but Appellant grabbed her by the arm and pulled her back down to the bed. K.J. felt a sharp, intense pain in her shoulder after hearing it pop, causing her to cry out. K.J. testified that Appellant subsequently put his hand and then his penis inside her vagina without her consent as she screamed "no" while in intense pain because of her injured arm. K.J. additionally testified that she was on her menstrual cycle at the time and that she had a tampon inserted the entire time this encounter took place.

2

When Appellant finished, K.J. cleaned herself up in the shower and exited the home. K.J. first called her mother and then called the police. Abilene Police Officer Robert Collins was one of the officers who responded. After making contact with K.J., Officer Collins entered the home with Officer Ryan Woodard to locate and arrest Appellant. Officer Collins testified that Appellant was found naked in the bed and extremely intoxicated. Appellant was in a deep sleep and required a sternum chest rub for a couple of minutes in order to wake up.

K.J. was taken to the hospital to be treated for her shoulder injury and was then transferred to another hospital for an evaluation by a Sexual Assault Nurse Examiner (SANE). Officer Collins took photos of the bite mark on K.J.'s neck while at the hospital.

The police officers arrested Appellant and took him to jail. Abilene Police Detective Roger Romero later interviewed Appellant. While conducting the interview, Romero testified that he made note of the body language exhibited by Appellant. Detective Romero testified that, based on Appellant's mannerisms and demeanor, Detective Romero "knew there was some deception in [Appellant's] answers."

After he was convicted and sentenced, Appellant filed a motion for new trial in which he generally asserted that the verdict was contrary to law and also that he had received ineffective assistance of counsel at trial. The motion for new trial was overruled by operation of law without being heard by the trial court. *See* TEX. R. APP. P. 21.8(c).

*Analysis*

In his first issue, Appellant alleges ineffective assistance of trial counsel. He directs this issue toward the manner in which trial counsel handled the questioning of Detective Romero about Appellant's credibility. Appellant contends that the case essentially turned on the relative credibility of K.J. versus Appellant. Appellant

3

asserts that trial counsel, without objection, "allowed incessant, impermissible comments and inadmissible testimony" to be admitted regarding whether Appellant was telling the truth.

To establish that counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the

presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*

We note at the outset of our analysis that a hearing was not held on Appellant's motion for new trial. Accordingly, the appellate record does not contain an explanation from trial counsel concerning his actions. With respect to Appellant's first issue, he asserts that trial counsel was ineffective in the following respects: (1) by not objecting when the prosecutor elicited testimony from Detective Romero about Appellant's truthfulness during his interview and (2) by not objecting during closing arguments when the prosecutor called Appellant a liar.

Appellant contends that trial counsel was ineffective by not objecting to Detective Romero's testimony that Appellant was being deceptive by his guarded body language, hesitant tone of voice, and long pauses when answering questions pertaining to the alleged offense. When the defendant alleges ineffective assistance of counsel for not objecting to testimony, he must show that the trial court would have committed error in overruling an objection to the testimony if trial counsel had made one. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Evidence showing that an accused was deceptive during an investigation is relevant and admissible. *Brown v. State*, 580 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd)). "However, an expert is not permitted to give a direct opinion on the truthfulness of a witness." *Id.* (citing *Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993)).

Based on the record before us, we cannot negate the possibility of a sound trial strategy as the reason for trial counsel not objecting to the questions asked of Detective Romero. Objecting to testimony can have the effect of drawing attention

to the objected-to testimony rather than keeping it from the jury's consideration. *See Cooper v. State*, 788 S.W.2d 612, 618 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). Additionally, counsel may have been concerned that objecting to the testimony would make it appear that the defense was hiding something from the jury's attention. *See Pacheco v. State*, No. 04-11-00036-CR, 2012 WL 566072, at *4 (Tex. App.—San Antonio, Feb. 15, 2012, no pet.) (mem. op., not designated for publication).

Here, trial counsel presented a different perspective of the situation, both on cross-examination of Detective Romero and during direct examination of Appellant. Specifically, trial counsel pointed out during his cross-examination of Detective Romero that Appellant may have been nervous or confused because of the accusations made against him by K.J. Trial counsel's line of questioning on cross-examination eventually resulted in Detective Romero's admission that he was "not sure what [Appellant was] thinking." During his direct examination, Appellant testified that, during the interview with Detective Romero, he was confused about why K.J. was making the allegations against him because he had not sexually assaulted her and that he was being cautious in making his responses to Detective Romero.

Based on the record before us, we cannot say that counsel's conduct with regard to Detective Romero could not be considered sound trial strategy. Accordingly, Appellant has not met his burden under the first prong of the *Strickland* test of demonstrating that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88. Furthermore, the record does not show a reasonable probability that the result would have been different but for counsel's alleged error. *See id.* at 694. We have noted that trial counsel was able to show an alternate explanation for Appellant's conduct during the interview

through his cross-examination of Detective Romero and trial counsel's direct examination of Appellant.

Appellant's next assertion of ineffective assistance of counsel relates to trial counsel not objecting when the prosecutor called Appellant a liar during closing argument. In closing arguments, the prosecutor stated: "But we know [Appellant is] a liar because he admitted to it." The prosecutor made this comment in direct reference to Appellant's testimony during the guilt/innocence phase.

By taking the stand and testifying, Appellant placed his credibility at issue, thereby giving the prosecutor the right to question it. *See Browne v. State*, 483 S.W.3d 183, 196 (Tex. App.—Austin 2015, no pet.). In his trial testimony, Appellant admitted that he had not told Detective Romero his version of what occurred. This conflict in Appellant's account of what occurred was sufficient to support an inference that Appellant was lying at trial. *See id.* As such, the prosecutor's argument was proper jury argument because it was a reasonable deduction drawn from the evidence. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); *Browne*, 483 S.W.3d at 196. Accordingly, trial counsel was not ineffective for not objecting to the prosecutor's argument that pointed out the inconsistencies in Appellant's trial version of the encounter with K.J. We overrule Appellant's first issue.

In his second issue, Appellant asserts that the trial court erred in denying Appellant's motion for new trial. Appellant's second issue presents two matters for our consideration. First, Appellant contends that the trial court erred by not conducting a hearing on Appellant's motion for new trial. Appellant also asserts that the trial court erred by denying his motion for new trial.

A defendant's right to a hearing on a motion for new trial is not absolute. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). As a general rule, a trial court should hold a hearing if the motion and attached affidavits raise matters

that are not determinable from the record and that could entitle the accused to relief. *Id.* When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009). In so doing, we reverse only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

A motion for new trial must be "presented" to the trial court within ten days of being filed. TEX. R. APP. P. 21.6. The purpose of presentment is to put the trial court on actual notice that the moving party desires "the judge to take some action, such as making a ruling or holding a hearing, on his motion for new trial." *See Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). The movant has the burden of presentment, which "must be apparent from the record." *Id.*; *see also Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).

The matter of presentment of the motion for new trial involves error preservation. *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017) (citing *Rozell*, 176 S.W.3d at 230). The rationale for this requirement is the same as that which supports preservation of error generally; a trial court should not be reversed on a matter that was not brought to the trial court's attention. *Carranza*, 960 S.W.2d at 79. Presenting the motion, along with a request for a hearing, is required to let the trial court know that the defendant wants the trial court to act on the motion and that the defendant would like a hearing on the motion. *Rozell*, 176 S.W.3d at 230.

The movant can show presentment with "the judge's signature or notation on the motion or proposed order, or an entry on the docket sheet showing presentment or setting a hearing date." *Gardner*, 306 S.W.3d at 305. Although presentment can be shown in many ways, counsel's statement that a motion was presented is not sufficient to show that the trial court had actual notice of the request for a hearing. *Rodriguez v. State*, 425 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2014,

no pet.); *see also Bearnth v. State*, 361 S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("We cannot conclude that the presentment requirement was satisfied where the record shows only defense counsel's statement that the motion had been presented, but does not indicate that counsel in fact communicated the request for a hearing in a timely manner to a person capable of acting on it."). Likewise, an uncorroborated affidavit by defense counsel in which counsel states that counsel discussed a motion or request for a hearing with the trial court is insufficient to show presentment absent other evidence in the record. *See Perez v. State*, 429 S.W.3d 639, 644 (Tex. Crim. App. 2014). The record must contain some evidence that the defendant or his counsel took "steps to obtain a setting or attempted to get a ruling on a request for a hearing." *Id.*

Appellant contends that the unsworn "Certificate of Presentment" (Certificate) filed by Appellant's counsel shows that his request for a hearing was timely presented to the trial court. The Certificate states that counsel e-mailed a proposed order to the trial court in which Appellant requested a hearing. However, a copy of the proposed order does not appear in the record. The Certificate further contains a statement that counsel orally informed the trial court that Appellant desired a hearing on his motion for new trial. Even assuming for the sake of argument that the conversation counsel refers to took place, the conversation did not take place on the record, and uncorroborated affidavits by counsel are insufficient to show presentment. *See Perez*, 429 S.W.3d at 644. Likewise, the docket sheet does not contain any notations or settings after the final day of trial. Therefore, we cannot say that, on this record, Appellant met his burden to present his request for a hearing on the motion.

Because the record does not establish that Appellant gave the trial court actual notice of his desire for a hearing on the motion, he failed to preserve his complaint

9

for review.  As such, we do not reach the question of whether the trial court abused its discretion when it did not hold a hearing on Appellant's motion for new trial.

With respect to the trial court's denial of the motion for rehearing, Appellant contends that he established that his trial counsel was ineffective because he did not offer exculpatory evidence during the guilt/innocence phase and that he failed to present mitigation evidence during punishment.  The alleged exculpatory evidence was a single text message from K.J. to Appellant that stated: "At this point **ill [sic] do anything** to get away from you." The mitigation evidence concerned Appellant's good character.  Finally, Appellant contends that his trial counsel should have impeached K.J.'s testimony at punishment with a text message suggesting that she wanted to move away from Abilene prior to the encounter.

The decision to call a witness is generally a matter of trial strategy.  *Carter v. State*, 506 S.W.3d 529, 541 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Furthermore, the manner of conducting cross-examination is inherently a matter of trial strategy.  *See Collier v. State*, 528 S.W.3d 544, 547 (Tex. App.—Eastland 2016, pet. ref'd).  As we have previously noted, Appellant's trial counsel has not had an opportunity to rebut the allegations of deficient conduct on his part.  The record does not establish that trial counsel's conduct was not the product of a sound trial strategy. Trial counsel vigorously cross-examined K.J. during the guilt/innocence phase.

With respect to punishment, trial counsel chose to emphasize that Appellant had no prior criminal record and that he did not have any negative issues for the two years while out on bond awaiting trial.  Trial counsel asserted that Appellant's lack of a record and his good conduct while awaiting trial made him a good candidate for probation.  The mitigation evidence that Appellant cites speaks generally to Appellant's good character.  Trial counsel may have chosen to not use that evidence in light of the fact that the jury had just determined that Appellant was guilty of both alleged offenses.  On this record, we cannot conclude that the trial court abused its

10

discretion by overruling Appellant's motion for new trial.  We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


January 29, 2021

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[1]

Williams, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.