

# NUMBER 13-20-00220-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PETER ISIAH UVALLE,                                      Appellant,

**v.**

THE STATE OF TEXAS,                                       Appellee.

## On appeal from the 139th District Court
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

Appellant Peter Isiah Uvalle was convicted of murder, a first-degree felony, and sentenced to thirty-five years in the Texas Department of Criminal Justice Institutional Division and a fine of $5,000. *See* TEX. PENAL CODE ANN. § 19.02(b), (c). In his first three issues Uvalle argues that the trial court erred by (1) denying his motion to suppress and (2–3) denying his motions for mistrial. In his fourth issue, Uvalle argues that he received

ineffective assistance of counsel. We affirm.

## I.    MOTION TO SUPPRESS

Uvalle was indicted for the first-degree felony offense of murder. *See id.* In the indictment, the State alleged that Uvalle intentionally or knowingly caused the death of Jonathan Alcala by shooting him with a firearm.

Uvalle filed a motion to suppress statements he made to law enforcement, arguing that his statements were involuntary and coerced, that he was deprived of his right to counsel, that he was illegally detained, and that the statements were taken "without the safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure." During the subsequent hearing on Uvalle's motion, the State called Investigator Enrique Ontiveros of the Pharr Police Department (PPD). Investigator Ontiveros testified that he works in the crimes against children unit. Investigator Ontiveros along with Sergeant Garza, also with PPD, interviewed Uvalle in a hospital room at Doctor's Hospital at Renaissance (DHR) after he had been treated for a gunshot wound. Investigator Ontiveros brought a video recorder, which was set up on a table next to Uvalle's hospital bed. At the outset of the video recorded interview, Investigator Ontiveros read Uvalle his Miranda warnings and Uvalle initialed and signed the document reflecting that he understood and waived his rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Uvalle did not invoke his rights at any time during the interview, nor did he request to stop the interview. Investigator Ontiveros testified that Uvalle was not coerced or threatened in any way and that Uvalle was awake and lucid for the interview. Investigator Ontiveros explained that, prior to going to the hospital to interview Uvalle, he called DHR to inquire

2

about Uvalle's status and the nurses indicated that Uvalle was "stable and not sedated."

The video recording of the interview was admitted for purposes of the hearing without objection and played for the trial court. The recording begins with Investigator Ontiveros discussing the Miranda warnings with Uvalle. Uvalle acknowledges his understanding of his rights and signs a waiver of the rights. The interview proceeds and Uvalle answers the questions asked of him. During the course of the interview, Uvalle's story of how he was injured changes, and he eventually implicated himself in Alcala's shooting.

On cross-examination, Investigator Ontiveros stated he could not recall if he had spoken with medical personnel when he arrived at the hospital. Investigator Ontiveros stated that, prior to starting the recording, he introduced himself to Uvalle and asked how he was feeling. He agreed that he got to the hospital around 1:00 p.m. and the recording of the interview did not begin until 1:46 p.m., but he could not specifically account for what took place during the forty-six minute period between the time he arrived and the time the recording began. Investigator Ontiveros and Sergeant Garza were armed with their service weapons during the interview. Another officer was also present during the interview and was standing by the door. While Investigator Ontiveros stated that Uvalle understood his rights when he waived them, on cross-examination he agreed that he was unaware of Uvalle's mental capacity.

According to Investigator Ontiveros, the nurses informed him that Uvalle had received pain medication at 6:30 a.m. When presented with Uvalle's emergency department medical records, Investigator Ontiveros agreed with Uvalle's counsel that

3

Uvalle was noted in the records as unable to sign or consent to medical treatment upon his arrival. Because of the ongoing investigation, Uvalle was not permitted to have any visitors outside of officers from PPD. PPD consented on Uvalle's behalf to the medical treatment. As per Uvalle's medical records, he was given an antibiotic, which Uvalle's counsel argued can cause dizziness, headaches, and seizures. Uvalle was also receiving morphine through an IV drip. Investigator Ontiveros did not change his opinion that Uvalle was competent to give an interview, even knowing the medications he received and the potential side effects. He agreed that having just had surgery could affect a person's mental and physical state, but he did not recall Uvalle undergoing surgery prior to the interview. He could not recall whether Uvalle stated he was in pain and wanted to call a nurse, but he did not disagree with Uvalle's counsel's suggestion that this occurred. Investigator Ontiveros further agreed that being injured could potentially influence a person's ability to understand and waive their rights, but he believed Uvalle was coherent at the time of the interview.

On re-direct examination, Investigator Ontiveros testified that Uvalle never complained of any side effects of the medication he was administered. He stated that Uvalle seemed to understand and comprehend the questions being asked of him and did not appear impaired.

Uvalle testified that he was eighteen years old at the time of the interview. At that time, he was in the hospital for gunshot wounds to his arm and chest. As part of his treatment in the hospital, a tube was placed into his lung for drainage. While hospitalized, he was not allowed to contact his family. Uvalle recalled that he "passed out" three times

4

while hospitalized and stated that one time when he woke up, there were "like 10 officers" in his hospital room. The presence of the officers in his room made him "feel scared and nervous." During the interview, Uvalle stated that he had pain in his chest and a migraine. He asked Investigator Ontiveros to contact the nurse because he was in pain, but Investigator Ontiveros denied his request, stating the interview was almost over. Uvalle testified that on the day of the shooting, he had taken "like 10 Xanax" and on the night of the shooting he had taken five Xanax. At the time of the interview, he felt like he was "intoxicated." Uvalle said he had been given "heavy" medication at the hospital and had not been given any food. During his hospitalization, there was always an officer present at his bedside, which he stated made him feel scared and intimidated. He did not feel free to leave. He testified that, when he was given his *Miranda* warnings, he signed them "under the influence of medication."

On cross-examination, Uvalle agreed that he had never told anyone that he was scared or nervous, and that he was not threatened by the officers. He was not forced to talk to the officers and he agreed that Investigator Ontiveros was respectful. He admitted that he did not tell Investigator Ontiveros that he was in pain during the interview. He further agreed that he was coherent that afternoon and understood what was going on when he talked to Investigator Ontiveros "freely and voluntarily." He also agreed that he was able to move his hands, fingers, and head, and was able to communicate with the officers.

The trial court then heard argument from both sides and denied the motion to suppress. After the notice of appeal was filed, we abated the appeal and instructed the

court to issue findings of fact and conclusions of law regarding the voluntariness of Uvalle's recorded statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6; *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) ("[W]ritten findings are required in all cases concerning voluntariness."). The trial court subsequently issued the following pertinent findings of fact and conclusions of law:

> b. Restraint: [Uvalle] was not under arrest at any point during his interactions with Inv. Ontiveros.[1]
>
> c. Attitude and demeanor of [Uvalle]: [Uvalle] understood the questions asked of him.
>
> d. [Uvalle] was advised his [*Miranda*] rights and agreed to waive his rights and indicated this by initialing next to each right and placing his signature on the statement.
>
> e. No coercion or intimidation: [Uvalle] admits on cross examination that he was not threatened by the officers, with a gun or otherwise, or bribed to provide a statement. He was treated respectably by them.
>
> f. [Uvalle] at no point made a request or demand for counsel.
>
> g. [Uvalle] at no point asked for the interview to cease.
>
> h. [Uvalle] had been administered medication for the pain resulting from his gunshot wounds to the arm and chest but the side effects he felt, if any, did not prohibit him from giving a voluntary statement to the officers.
>
> i. [Uvalle] was lucid and talking freely while providing his statement. [Uvalle] does not stutter. [Uvalle] does not tell the officers he does not want to talk.
>
> j. The interview was not a result of a custodial interrogation but a voluntary statement.
>
> k. [Uvalle] was not nervous or anxious such that his statement is rendered involuntary.

---

[1] Each finding includes a reference to the reporter's record. We omit those references herein.

l.      [Uvalle] did not appear to be stressed or under the influence of any medication.

m.      [Uvalle] understood the questions and knew where to sign the statement.

The trial court concluded that "the statement was freely and voluntarily made by [Uvalle]" and that "as a matter of law that all prerequisites for a voluntary statement were satisfied."

## A.      Standard of Review & Applicable Law

We review a trial court's decision to deny a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We employ "a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness," but "applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d. 587, 590 (Tex. Crim. App. 2006). At a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses and the "weight to be given their testimony." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules prescribed in the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.21. Article 38.22, § 3 of the code of criminal procedure provides that an oral custodial statement is inadmissible as evidence unless, among other things, the accused is warned prior to the statement as

7

provided in § 2 of article 38.22 and knowingly, intelligently, and voluntarily waives the rights set out in the warning; an electronic recording is made of the statement; and all voices on the recording are identified. *Id.* art. 38.22, § 3(a).

## B. Analysis

Statements "given under the duress of hallucinations, illness, medications, or even a private threat, for example, could be involuntary" under Articles 38.21 and 38.22. *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008). We assess the voluntariness of a statement by considering the totality of the circumstances under which it was made. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) (citing *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991)); *Williams v. State*, 502 S.W.3d 262, 272 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In this consideration, we take into account Uvalle's experience, background, and conduct, as well as his characteristics. *Umana v. State*, 447 S.W.3d 346, 351 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citations omitted).

The totality of the circumstances supports the trial court's determination that Uvalle's statements were voluntary. Although Uvalle argues that he was on a "cocktail of medications" and *could* have been experiencing side effects of those medications, the record shows he was advised of his rights, indicated he understood his rights, and consented to questioning. He appeared lucid during questioning, providing answers to the questions posed and formulating exculpatory, defensive responses. At no time during the interview was Uvalle threatened or otherwise coerced to speak with the officers. Uvalle testified at the hearing on his motion that the officers treated him respectfully.

8

Although Uvalle testified that he was "under the influence of medication" and felt "intoxicated" when he signed the waiver of his *Miranda* rights, the trial court could have disbelieved that testimony, and we must defer to that decision. *See Martinez*, 348 S.W.3d at 922.

Accordingly, considering the totality of the circumstances, we hold the trial court did not abuse its discretion in denying Uvalle's motion to suppress pursuant to his claim of involuntariness under Article 38.22 of the Texas Code of Criminal Procedure. *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (finding appellant's statement voluntary where appellant was ill and on medication); *see also Torres v. State*, No. 04-16-00622-CR, 2017 WL 5759380, at *10–11 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) (mem. op., not designated for publication) (finding appellant's statement voluntary where appellant was in pain and argued his state of mind was altered). Uvalle's first issue is overruled.

## II.    MOTIONS FOR MISTRIAL

In his second and third issues, Uvalle argues that the trial court erred in denying his motions for mistrial when: (1) "prosecutors spoke with witnesses in the hallway, as a group, regarding testimony once the rule had been revoked"; and (2) "prosecutors failed to provide a report from an investigator, which [the investigator read] from during his testimony."

## A.    Standard of Review & Applicable Law

"Appellate courts review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard of review." *Browne v. State*, 483 S.W.3d 183, 203 (Tex.

9

App.—Austin 2015, no pet.). A mistrial will only be required under extreme circumstances where the prejudice is incurable. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (explaining that mistrial may be used as "remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile'" (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999))).

### 1. Communication with Witnesses

In Uvalle's first motion for mistrial, he argued that the prosecutors improperly met with witnesses in the hallway of the courthouse after the first day of trial had concluded. According to Uvalle, his mother Nereyda Uvalle "overheard prosecutors speaking with witnesses in the hallway" regarding certain testimony from that day. Nereyda testified before the trial court, outside the presence of the jury, regarding what she had seen and heard in the hallway. She explained that she saw the two prosecutors speaking with multiple witnesses regarding an incident that occurred between Uvalle and a detention officer at the jail where he was being held.

Texas Rule of Evidence 614 provides for the exclusion of witnesses from the courtroom during trial. *See* TEX. R. EVID. 614. The purpose of "the Rule" is to prevent corroboration, contradiction, and the influencing of witnesses. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Once it is invoked, a witness should not be allowed to hear any testimony in the case or talk to any other person about the case without the court's permission. *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, pet. ref'd). While the trial court is

obligated to exclude witnesses from the courtroom during other witnesses' testimony, the court's decision to allow testimony from a witness who has violated "the Rule" is discretionary. *See Bell*, 938 S.W.2d at 50. We review that decision for abuse of discretion. *Id.*

In reviewing the trial court's decision to allow the testimony, we look at whether the defendant was harmed by the witness's violation of "the Rule." *Id.* Two suggested criteria for determining injury or prejudice in this situation are: (1) whether the witness actually conferred with or heard testimony of other witnesses; and (2) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. *Id.* (citing *Webb*, 766 S.W.2d at 240).

Assuming arguendo that "the Rule" was in fact violated by the prosecutors' discussions with the witnesses outside of the courtroom, Uvalle has failed to meet his burden to show how this supposed violation harmed him. At the hearing on the motion for mistrial, Uvalle's counsel repeatedly stated that the violation of "the Rule" would impact their ability to cross-examine the witnesses, but did not explain how. Further, on appeal, Uvalle merely states that the behavior of the prosecutors was improper and "unfair," but does not address how the potential violation impacted testimony or the trial itself. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Because of this, we do not find any harm or prejudice resulted from the violation of "the Rule." Therefore, the trial court did not abuse its discretion in denying the motion for mistrial.

11

*See Potter v. State*, 74 S.W.3d 105, 111 (Tex. App.—Waco 2002, no pet.) (finding that it was not an abuse of discretion to allow witnesses to testify after violation of "the Rule" where there was no evidence that the violation influenced any testimony through corroboration or contradiction). Accordingly, Uvalle's second issue is overruled.

## 2. Witness Report

Uvalle's third issue concerns the alleged withholding of evidence by the State. A violation of constitutional due process rights occurs when the state suppresses, willfully or inadvertently, evidence favorable to appellant. *Brady v. Maryland*, 373 U.S. 83 (1963). There can be no *Brady* violation without suppression of favorable evidence in the State's possession. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).

Article 39.14 of the Texas Code of Criminal Procedure provides, in part:

> [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

TEX. CODE CRIM. PROC. ANN. art. 39.14(a). The State's statutory obligation to disclose evidence under article 39.14 "is much broader" than the constitutional obligations imposed by *Brady*. *See, e.g.*, *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021); *Ex parte Martinez*, 560 S.W.3d 681, 702 (Tex. App.—San Antonio 2018, pet. ref'd).

12

Uvalle argues that an investigator testifying for the State was relying on and testifying from a report that had not been previously disclosed to the State nor to the defense. While Uvalle goes into details regarding the pre-trial discovery process and the alleged "delays" by the State to produce discovery as required under the rules, Uvalle's discussion in his brief regarding the investigator's report is minimal. Uvalle explains that when it was determined that the witness was reading from an undisclosed report, a continuance was requested by the defense and granted, and a hearing was subsequently held. Initially, on its own motion the trial court indicated that it would be granting a mistrial and resetting for a new trial date. After some discussion with the attorneys and some argument from the State, the trial court decided to "hold the mistrial in abeyance" and continued the trial. Uvalle makes a blanket assertion that the trial court erred in failing to grant the mistrial "after cumulative delays by the State for failure to not [sic] comply with 39.14 discovery requests."

The defense was granted a continuance to review the report before the witness continued his testimony. In his briefing, Uvalle does not address the report that was discovered during trial, nor does he explain how the late discovery of the report was the fault of the State or harmful to his presentation of his defense. Outside of his detailed account of the proceedings, Uvalle presents no analysis regarding the issue he brings on appeal aside from his conclusory statement that it was error to deny a mistrial. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Accordingly, Uvalle's third issue is overruled as inadequately briefed.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his final issue, Uvalle argues that his counsel was ineffective for (1) "initially fail[ing] to ask for a [m]istrial when a new report was discovered during testimony of the witnesses"; (2) failing to get a final ruling on the motion for mistrial related to the new report; (3) failing to request a mistrial when "a phone was found in [Uvalle's] clothing retrieved from the hospital"; and (4) failing to file a written and sworn motion for a continuance to preserve error.

### A. Standard of Review & Applicable Law

To prevail on an ineffective-assistance claim, Uvalle must prove (1) his trial counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his trial counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A defendant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999). There is a strong presumption that the trial counsel provided effective assistance. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). Though Uvalle filed a motion for new trial, he did not raise a claim of ineffective assistance of counsel, and therefore the record is silent as to any trial strategy by Uvalle's trial counsel. *See Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny

14

relief on an ineffective assistance claim on direct appeal.").

**B.      Analysis**

Aside from Uvalle summarizing the reporter's record by providing a factual "play-by-play" of the alleged errors he believes occurred, Uvalle's brief makes little attempt to affirmatively prove either of the prongs under *Strickland*. *See Mitchell*, 989 S.W.2d at 748. Uvalle makes a general assertion that there was a cumulative effect of the alleged errors that resulted in ineffective assistance of counsel. After acknowleding that trial counsel was "a zealous advocate," Uvalle states that there were many issues with his performance that arose over the course of the case, including late discovered evidence and reports. However, Uvalle presents no explanation as to how counsel's strategy fell below the objective standard of reasonableness as to be deficient, nor does he explain what, if any, prejudice resulted from the alleged errors. *See id.* To meet his burden, Uvalle must show by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that this deficient performance rendered the result of the proceeding unreliable. *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002). His bare assertion that, had counsel undertaken the actions he suggests, it "appeared" that the trial court would have granted a motion for mistrial or some other relief to provide a "fair trial" contains no legal analysis or explanation. Accordingly, Uvalle has not met his burden. *See id.*; *see also* TEX. R. APP. P. 38.1(i). Uvalle's fourth issue is overruled.

## IV.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
7th day of November, 2023.